UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN CHARLES CRANDALL,

    Plaintiff,

v.

NEWAYGO COUNTY, RACHEL
ROBINSON,

    Defendants.
_____/

Case No. 1:22 cv-1193

Hon. Hala Y. Jarbou

## **OPINION**

    Plaintiff Nathan Charles Crandall brings this civil rights action against Defendants Newaygo County and Rachel Robinson, asserting claims under 42 U.S.C. § 1983. He seeks monetary damages and a declaratory judgment as well as injunctive relief. Crandall has asserted claims under § 1983 for monetary and injunctive relief against Robinson in Counts I, III, and IV. He has also asserted claims under § 1983 for monetary and injunctive relief against Newaygo County in Counts II, III, IV, and V. Before the Court is Defendants' motion to dismiss (ECF No. 8). For the reasons stated below, the Court will grant the motion.

### **I. FACTUAL BACKGROUND**

    In April of 2020, Crandall was living with his girlfriend, Erickah Lei Kasankiewicz-Cook, and two pit bulls at Crandall's residence. (Compl. ¶ 11, ECF No. 1.) On April 20, 2020, the pit bulls entered onto a neighboring property and mauled a Jack Russell terrier to death. (*Id.* ¶ 12; *see also People v. Kasankiewicz-Cook* Show Cause Hr'g Tr. 7-8, 15-17, ECF No. 8-5.)

    At the time, Robinson was a prosecutor with Newaygo County. (Compl. ¶ 13.) On August 20, 2020, Robinson prepared, swore to, and filed a "Complaint and Summons Regarding a

Dangerous Animal" in Michigan's 78th Judicial District Court under Mich. Comp. Laws §§ 287.286a, 287.322. (State of Mich. Compl. & Summons, ECF No. 8-2.) At a show cause hearing, Crandall testified under oath that he did not have a property interest in the animals. (*People v. Crandall* Show Cause Hr'g Tr. 5, ECF No. 8-3.) The court told Crandall that the prosecutor (Robinson) filed the order against him because she believed he was the owner of the dogs. (*Id.*) The court then told Crandall that Robinson believed this because the dogs were kept at his residence, and that the government would be re-filing against the proper party in order to "make sure that the party who owns the animals has an opportunity to be in court and could either agree or contest [the order to show cause]." (*Id.* at 6.) The transcript of this exchange is as follows:

> The Court: Ms. Robinson had indicated she had a chance to talk to you just a few minutes.
>
> Crandall: Uh-huh.
>
> The Court: And [Robinson is] indicating they're actually not your dogs.
>
> Crandall: No. They're not.
>
> The Court: who -- who[se] dogs are they?
>
> Crandall: They're my girlfriend Erickah Cook's.
>
> The Court: Oh, okay. So they're -- you're not the owner?
>
> Crandall: No. I'm not at all.
>
> [The court then has Crandall sworn in and proceeds]
>
> The Court: Okay. And Mr. Char -- Crandall, you -- you received a copy of the -- of the prosecutor's motion --
>
> Crandall: Uh-huh.
>
> The Court: -- to show cause why the animals should not be condemned?
>
> Crandall: Yes.
>
> The Court: Okay. And -- and -- but what you're indicating to the court here today is that they're not yours; you don't have a property interest in the animals.

Crandall: No.

The Court: They're -- they're-- they're the -- your girlfriend's apparently?

Crandall: uh-huh.

[Robinson then moves to dismiss the case against Crandall and notifies the court that she will re-file it against the proper party.]

The Court: Uh-huh. Okay. They thought you were the owner because apparently that was at your residence or something but --

Crandall: Right.

The Court: -- but anyways, they're going to dismiss the show cause against you --

Crandall: Okay.

The Court: -- and they're going to re-file against the -- the party -- it -- the ultimate thing is you want to make sure the party who owns the animals has an opportunity to be in court and could either agree or contest --

Crandall: Right.

The Court: -- and so that's what that's all about.

Crandall: Yeah.

The Court: So they're going to dismiss the case against you. All right?

Crandall: Yep.

(*People v. Crandall* Show Cause Hr'g Tr. 3-6.) The Court then dismissed the case without prejudice. (Dismissal Order, ECF No. 8-2.) Robinson then re-filed the case against Kasankiewicz-Cook and did not name Crandall as a defendant. (Compl. ¶ 20.) The proceedings against Kasaniewicz-Cook resulted in an order that the two dogs "be destroyed at the expense of the owner" in accordance with Mich. Comp. Laws § 287.322. (Order Regarding Dangerous Animal, ECF No. 8-4.)

3

## II. LEGAL STANDARDS

When considering a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or "formulaic recitations of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts are generally bound to consider only the complaint when resolving a motion to dismiss unless the Court converts the motion to one for summary judgment. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (internal citations omitted).

## III. ANALYSIS

### A. Jurisdiction

Defendants argue that the Court lacks jurisdiction under *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine "stands for the simple . . . proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Med. Plan. Servs., Inc.*, 142 F.3d 326, 330 (6th Cir. 1998) (citations omitted). The two types of cases where *Rooker-Feldman* is applicable are (1) cases that mount a direct attack on the substance of a state court opinion, and (2) cases that challenge the procedures by which a state court has arrived at its

4

decision. *Rooker-Feldman* is "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Lance v. Dennis*, 546 U.S. 459, 464 (2006). Crandall is not prevented from bringing this suit because he was not a party to the underlying suit which he claims is the source of his injury. Thus, *Rooker-Feldman* does not apply, and the Court has jurisdiction over this matter.

### B. Judicial Estoppel

Judicial estoppel bars a party from: "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as a part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). Judicial estoppel prevents the "perversion of judicial machinery." *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 472 (6th Cir. 1988). There is no set formula for assessing when judicial estoppel should apply. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Courts typically focus on (1) whether a party's later position is "'clearly inconsistent' with its earlier position[,]" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (3) whether the party advancing the inconsistent position would gain an "unfair advantage" from being allowed to do so. *Id.* at 750-51 (internal citations and quotation marks omitted); *accord Han v. Hankook Tire Co., Ltd.*, 799 F. App'x 347, 349 (6th Cir. 2020).

At his hearing to show cause, Crandall disavowed all property interests in the dogs, a position clearly inconsistent with his current position that he is an owner. The state court accepted his earlier position, and as a result granted the prosecutor's motion to dismiss the case. To allow

5

him to now advance his inconsistent position and assert his claims, based upon his alleged property interest in the dogs, would permit him to benefit from misleading the other court.

As a result, Crandall is estopped from asserting a property interest in the pit bulls. Without a property interest in the two pit bulls, Crandall cannot plausibly allege claims under the Fourth Amendment for the seizure of the dogs, the Fourteenth Amendment for due process violations concerning the dogs, or any other § 1983 claims about the dogs. A claim under the Fourth Amendment for unreasonable search and seizure requires the plaintiff to have a property interest in the property to be seized. The same goes for a Fourteenth Amendment claim for violation of due process rights, the claimant must have a property interest which is subsequently taken away without due process of law. Finally, to have the standing to challenge a law as unconstitutionally vague, or to allege a flaw in prior proceedings based upon the evidentiary standard used therein, a claimant must have some interest at stake. Because Crandall is estopped from asserting any ownership of the dogs, he cannot plausibly allege any of the above claims. Accordingly, Defendants' motion to dismiss will be granted.

**C. Failure to State a Claim**

Even if Crandall is not judicially estopped from asserting an ownership interest in the dogs, his claims would be dismissed for failure to state a claim. Crandall asserts that his Fourth and Fourteenth Amendment rights were violated by Robinson and Newaygo County because he was not joined as an owner to the case against Kasaniewicz-Cook regarding the two pit bulls. Any lack of joinder to Kasaniewicz-Cook's state court case or asserted flaw in the procedure that she received makes no difference to Crandall's claims. Independent of the case brought against her, Robinson named Crandall in his own case. According to Crandall's response to Defendants' motion to dismiss, "[t]he gravamen of Plaintiff's . . . Complaint is that a seizure cannot be reasonable when it is obtain [*sic*] without all owners and that property cannot be taken without due

6

process." However, as explained below, Crandall has received all the process that he was due. Moreover, he has no claim against Robinson because she did not "seize" the dogs, regardless of his property interests or lack thereof. Any seizure of the dogs that occurs by operation of their current conditions of confinement or eventual euthanasia is executed by the courts and the animal control, not by Robinson. Crandall's claims are, as a matter of logic and of law, without merit.

A Fourteenth Amendment procedural due process claim requires Crandall to show "(1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he . . . was not afforded adequate procedures." *Paterek v. Vill. of Armada*, 801 F.3d 630, 649 (6th Cir. 2015) (internal citations omitted). To be adequate, those procedures require "notice and an opportunity to be heard before depriving [Crandall] of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005) (internal citations omitted).

The state court ordered Crandall to appear in court on August 26, 2020, and show cause as to why the two pit bulls should not be euthanized. Accordingly, he appeared in court on September 10th, 2020, and testified that he had received a copy of the prosecutor's motion to show cause as to why the animals should not be euthanized. He further testified that the dogs were not his, and that he had no property interest in the dogs.

In other words, Crandall received notice as to the potential deprivation of any rights he may have in the two pit bulls and received his opportunity to be heard in court. By stating under oath that the dogs were not his and that he had no property interest in them, Crandall chose not to use his opportunity to be heard. His choice not to utilize the process that was given to him does not result in a § 1983 claim. He was given notice, and an opportunity to be heard as required by the Constitution. At his hearing, he asserted in no uncertain terms that he was not the owner of

the pit bulls. Even though Crandall argues that he was not aware of a statute that names him as an owner, ignorance of the law is no excuse for not asserting his rights.

At any rate, the Court is not persuaded that Mich. Comp. Laws § 287.321 creates property rights, as opposed to imposing liability for the conduct of a dog under an individual's care. The preamble to the statute identifies its purpose to "provide penalties for the owners *or keepers* of dangerous animals[.]" Mich. Pub. Act 121 (2022) (emphasis added). The definition of "owner" as used in the act is "a person who owns or harbors a dog or other animal." Mich. Comp. Laws § 287.321. The act clearly contemplates that individuals could be responsible for the conduct of a dog, even if they are not the owner. That responsibility, however, does not give rise to property rights in the dog. Interpreting the statute to give property rights to a person who merely harbors an animal would have absurd results. It would make those who temporarily kennel, board, or house a dog partial owners of that dog, which cannot be what the Michigan legislature intended.

Even if liability for due process violations could attach, despite the process that Crandall was given, he fails to state a plausible claim against Newaygo County. He also is not entitled to monetary relief from Robinson because of prosecutorial immunity and qualified immunity. Finally, his claims for injunctive relief are meritless because the applicable statute is not vague, and the state court's application of a given standard of evidence is not attributable to either defendant.

### 1. Newaygo County

Newago County argues that Crandall has failed to state a plausible claim against it under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). A county cannot be held liable under a "respondeat superior" theory for the actions of its officials. *Id.* at 691. To state a claim, Crandall must "identify [a] custom, policy, or practice of Defendant, connect

8

that policy to the Defendant, and show it caused a constitutional violation." *Jordan v. City of Det.*, 557 F. App'x 450, 457 (6th Cir. 2014).

Crandall fails to identify a specific policy or custom of Newaygo County. Generally, a plaintiff may meet this requirement by showing "'(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Wiley v. City of Columbus*, 36 F.4th 661, 670 (6th Cir. 2022) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Crandall has not identified either an officially enumerated policy or legislative enactment of Newaygo County. Nor has he alleged facts to support an unofficial policy or custom. Instead, he has asserted a "policy indicating a deliberate course of action seizing dogs in an unlawful manner[,]" or "a deliberate course of action of not providing for federal constitutionally mandated [d]ue [p]rocess rights . . . for all owners, at a meaningful time and a meaningful manner, where injunctive relief is sought in the form of removing Plaintiff's property from Plaintiff's residence and euthanasia." (Compl. ¶¶ 64, 104.) His assertion of an unofficial policy or custom, in its full form, reads as follows: "Defendant Newaygo County has a custom of tolerance or acquiescence in not providing for federal constitutionally protections [*sic*] against the unlawful and permanent seizure of dogs. . . . Defendant Newaygo County's policy and custom violates the Fourth Amendment of the U.S. Constitution." (*Id.* at ¶¶ 67-69.) Although it is possible to allege an informal or unpublished policy, Crandall's threadbare assertions do not suffice. He relies solely on the facts of his own case; he does not plausibly allege a pattern of due process violations occurring in other cases that would suggest the existence of a policy or custom.

9

Crandall identifies Robinson as an official with final decision-making authority, based upon her decisions to commence lawsuits against the pit bulls at the center of this case. (Compl. ¶¶ 66, 106.) Because Robinson was acting to enforce state law, she was acting as an agent of the state rather than of Newaygo County. *See Cady v. Arenac County*, 574 F.3d 334, 345 (6th Cir. 2009). As such, he does not state a claim against Newaygo County for her actions.

Crandall apparently rests most of his claim on a failure to train and supervise. (Compl. ¶¶ 65, 105.) In order to adequately allege a failure to train or deliberate indifference to civil rights violations, Crandall must plead "(1) a clear and consistent pattern of illegal activity, (2) which the [county] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [county's] custom caused the deprivation of [his] constitutional rights." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767 (6th Cir. 2020) (first and second alteration in original) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, (2011). The facts supporting a claim for a failure to train must rise to the level of "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409, (1997)). Here, in the instances where Crandall alleges facts regarding a failure to train, he alleges facts about his own case; he does not allege a pattern of constitutional violations from which to infer deliberate indifference by Newaygo County.

It is true that Crandall can establish *Monell* liability where there was only a single violation of federal rights, but to do so, he must show that the county "'failed to train its employees to handle

10

recurring situations presenting an obvious potential' for a constitutional violation." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738-39 (6th Cir. 2015) (quoting *Brown*, 520 U.S. at 409). "'[O]bvious potential for such a violation' has two elements: It must be obvious that the failure to train will lead to certain conduct, and it must be obvious (i.e., clearly established) that the conduct will violate constitutional rights." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017). Failure by Robinson to join Crandall to a subsequent action, in reliance upon Crandall's sworn testimony that he did not own the dogs, does not and cannot rise to the level of "obvious potential for a constitutional violation."

In sum, Crandall does not state a claim against Newaygo County. Accordingly, the claims against Newaygo County in Counts II and V of the complaint are without merit.

### 2. Robinson

#### (a) Absolute prosecutorial immunity

Robinson is protected in her capacity as a prosecutor for all actions that she took "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial[.]" *Id.* Actions such as preparing a complaint and summons without securing all owners and without knowledge as to which of the two dogs caused the harm are within Robinson's role as a prosecutor. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1993); *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role."). Decisions about which party to join, as well as any other decisions about how to prosecute the case, are within Robinson's role as a prosecutor.

On the other hand, the actions of a prosecutor are not absolutely immune from suit when they fall outside their role as a prosecutor. The determination of immunity is made by examining "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). An example of an action that is not absolutely immune is signing an affidavit of facts as a swearing witness. *See Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997). Because Robinson signed an affidavit of facts as a swearing witness, that portion of her conduct is outside of her role as a prosecutor. When a prosecutor acts outside their role, they may still be protected under qualified immunity. As discussed above, however, Robinson did not deprive Crandall of his constitutional rights. She did not seize his property when filing the affidavit, nor did she deprive him of due process.

**(b) Qualified immunity**

Even if Crandall could somehow show that Robinson violated his constitutional rights, she would be entitled to qualified immunity. The full extent of Crandall's argument regarding the inapplicability of qualified immunity is that "'A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle' *Mc[K]enna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)." (Pl.'s Resp. 20, ECF No. 14.) Aside from the fact that Crandall mis-quotes his chosen case,[1] that case is twenty years old and from a different circuit.

It is true that the Sixth Circuit has said at several points in history: "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). This generality, however, is not applicable in every case. *See Crawford v. Tilley*, 15 F.4th 752, 763-66 (6th Cir. 2021) (stating

---

[1] The court in *McKenna* stated that "[w]e conclude that a qualified immunity defense can be presented in a Rule 12(b)(6) motion, but that the defense faces a formidable hurdle when advanced on such a motion[.]" 386 F.3d at 434.

that the "generally inappropriate" language from *Wesley v. Campbell* "is at best imprecise."). "'It is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds' because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Jackson v. City of Cleveland*, 64 F.4th 736, 745-46 (6th Cir. 2023), *reh'g denied*, No. 22-3253, 2023 WL 3806460 (6th Cir. May 10, 2023) (internal citations and quotation marks omitted).

In this instance, however, the conduct that Crandall asserts as the source of his injury is a legal action—the filing of a complaint and its outcome. There are no facts to discover. Therefore, an analysis of qualified immunity at this stage of the proceedings is appropriate.

"Qualified immunity is an affirmative defense that protects government officials from liability 'when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights.'" *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007)). Officials are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' . . . 'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (quoting *Reichle*, 566 U.S. at 664; *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). The plaintiff bears the

13

burden of showing that an official is not entitled to qualified immunity. *See LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016). Here, to show that Robinson is not entitled to qualified immunity for her conduct, Crandall must show it was unconstitutional "beyond debate" for Robinson to take Crandall at his word when he represented under oath that he was not the owner of the dogs. Merely showing in the abstract that it is possible to have a property interest in dogs is not enough, nor is it enough to state as a general principle that a property owner must receive notice and a chance to be heard in court before they are deprived of their property.

Robinson's conduct was not in violation of a clearly established constitutional right when defined at the proper level of generality. She was entitled to rely upon Crandall's assertions against ownership when she dismissed the case against him and proceeded against his girlfriend, Kasaniewicz-Cook, who Crandall stated was the proper owner. Crandall has not attempted to cite a case in which conduct similar to Robinson's violated a known constitutional right. As such, Robinson is entitled to qualified immunity and the claims for damages against her are meritless. Although Robinson is protected from liability for civil damages, qualified immunity does not apply to a claim for injunctive relief. To the extent that Crandall also seeks injunctive relief under § 1983, those claims are not barred by Robinson's qualified immunity.

### 3. Injunctive Relief

Crandall has asserted that his Fourteenth Amendment procedural due process rights have been violated as a result of the state court enforcing a "vague statute leading to arbitrary and discriminatory enforcement in violation of the Fourteenth Amendment." (Compl. ¶ 83.) He has also asserted that his Fourteenth Amendment rights were violated when the "court(s) in the underlying case did not utilize a clear and convincing standard, but rather a preponderance of the evidence standard[.]" (*Id.* at ¶ 95.)

### (a) Void for Vagueness

Crandall asserts that an animal must be previously adjudicated as a "dangerous animal" and then kill a dog in a subsequent incident before it may be destroyed by the state. He asserts that because the state court in *People v. Kasaniewicz-Cook* reached a different outcome than his proposed construction would require, it is unconstitutionally vague.

When the commands of a law are so vague as to be indiscernible to a person of "ordinary intelligence," the law is void under due process. *Hill v. Colorado*, 530 U.S. 730, 732 (2000) (A law must "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits."). But the constitutional concept of vagueness goes beyond ordinary ambiguity: "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). A plaintiff must clear a high hurdle to bring a successful void-for-vagueness claim. Courts may only strike down a law for vagueness when "the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982).

The portions of Michigan Law that Crandall claims are impermissibly vague in all applications are as follows:

> (1) Upon a sworn complaint that an animal is a dangerous animal and the animal has caused serious injury or death to a person or has caused serious injury or death to a dog, a district court magistrate, district court, or a municipal court shall issue a summons to the owner ordering him or her to appear to show cause why the animal should not be destroyed.
>
> . . .
>
> (3) After a hearing, the magistrate or court shall order the destruction of the animal, at the expense of the owner, if the animal is found to be a dangerous animal that caused serious injury or death to a person or a dog. After a hearing, the court may order the destruction of the animal, at the expense of the owner, if the court finds that the animal is a dangerous animal that did not cause serious injury or death to a person but is likely in the future to cause serious injury or death to a person or in the past has been adjudicated a dangerous animal.

>  (4) If the court or magistrate finds that an animal is a dangerous animal but has not caused serious injury or death to a person, the court or magistrate shall notify the animal control authority for the county in which the complaint was filed of the finding of the court, the name of the owner of the dangerous animal, and the address at which the animal was kept at the time of the finding of the court.

Mich. Comp. Laws § 287.322.[2] "Dangerous Animal" is defined in Mich. Comp. Laws § 287.321 to mean "a dog or other animal that bites or attacks a person, or a dog that bites or attacks and causes serious injury or death to another dog while the other dog is on the property or under the control of its owner."

Crandall does not allege that certain terms within the law render it unconstitutionally vague, but rather asserts that the state court misunderstood the conjunctive nature of "and" in the first clause of Mich. Comp. Laws § 287.322(1). This is not the only possible reading of the statute. A clear and commonsense reading of Mich. Comp. Laws § 287.322 would channel "dangerous animal[s]" into two relevant subsections. If the animal seriously injures or kills a person or a dog, subsection (3) applies. If the animal bites or attacks a person but has not caused serious injury or death to that person, subsection (4) applies. If the animal bites or attacks another dog without causing serious injury or death to that dog, it is not a dangerous animal for the purposes of Mich. Comp. Laws § 287.321 et seq. Regardless of whether it is a "reasonable reading" of Mich. Comp. Laws § 287.323(4) that "a dog must first be determined to be a 'dangerous animal' before a second finding that the 'dangerous animal' then causes serious injury or death to another dog," (Compl. ¶ 78), the statute applied in the underlying case is not impermissibly vague in all applications. Nor was it applied arbitrarily by the state court in the prior case. Mich. Comp. Laws § 287.321(a) defines a dangerous animal as "a dog or other animal that bites or attacks a person, or a dog that

---

[2] Mich. Comp. Laws § 287.322 has been revised effective June 29, 2022. The revision was not substantive but expanded subsection (4) into separate subsections (4) and (5).

16

bites or attacks and causes serious injury or death to another dog[.]" Because the law is not impermissibly vague in all its applications, which may be determined as a matter of law, Crandall's Fourteenth Amendment claim under Count III for injunctive relief fails.

### (b) Evidentiary Standard

Finally, Crandall asserts that he is entitled to injunctive relief against Defendants for their "failure . . . to apply a clear and convincing standard when analyzing and applying MCL 287.321 to the facts of the underlying case." (Compl. ¶ 96.) Crandall has not asserted how Newaygo County or Robinson are the cause of the asserted injury, which occurred when *the court* applied the allegedly incorrect evidentiary standard. Furthermore, as for his assertions about Newaygo County, the same requirements apply to state a *Monell* claim as analyzed above, and Crandall has failed to do so. As for Robinson, Crandall has not made any plausible assertion as to how her actions caused the court to apply a specific standard of evidence, let alone a standard of evidence that violates Crandall's due process rights under the Fourteenth Amendment. Accordingly, Crandall's claim under Count IV for injunctive relief also fails.

### IV. CONCLUSION

In short, Crandall received what process he was due under the Fourteenth Amendment when he received notice of, and an opportunity to be heard at, a hearing ordering him to show cause as to why the two pit bull dogs should not be destroyed. He is judicially estopped from taking the exact opposite stance and claiming a property interest in the pit bulls now. Even if Crandall is not judicially estopped, his claims still fail for the reasons stated above. The Court will

17

grant Defendants' motion to dismiss or, in the alternative, for judgment on the pleadings.  An order and judgment will enter consistent with this Opinion.

Dated: June 15, 2023                         /s/ Hala Y. Jarbou
                                                            HALA Y. JARBOU
                                                            CHIEF UNITED STATES DISTRICT JUDGE